Thank you. Would you announce our fourth case for argument? Mr. Sternberg. Thank you, Your Honor. Can you hear me? We can. All right. Thank you so much. May it please the court. I'm Jonathan Sternberg, and I represent the appellant, Henry Asomani. Mr. Asomani appeals from a judgment, of course, after a jury trial convicting him of six counts, three of which were for forms of fraud, and sentencing him to prison and restitution, and imposing a forfeiture of some $381,000. We had three issues on appeal, though, as I informed my opposing counsel in the court last week, we're withdrawing and conceding the second issue in our brief, leaving the other two, of which I'd like to begin with the first. And that's the district court erred, as a matter of law, in refusing an instruction my client proffered on the defense of good faith in fraud cases, taken verbatim from this court's model. Mr. Sternberg, just so I'm clear, what's the issue you're conceding? Oh, issue two, about the restitution. Challenging the amount of restitution. I agree with opposing counsel, it's not preserved sufficiently for appeal. Anyway, on to issue one, which I was going to begin with. The district court erred, as a matter of law, in refusing an instruction my client proffered on the defense of good faith, taken verbatim from model instruction 9.08a, when it failed to view the evidence as the law requires, this court should reverse and remand for a new trial. Each party in a dispute before a jury is entitled to the instructions that the evidence viewed favorably to that party would support. In a criminal case, of course, this means that, on one hand, if evidence viewed most favorably to the government would be proof beyond a reasonable doubt of an offense, even if the jury might ultimately disbelieve it, that charge survives a motion for judgment of acquittal and the jury's instructed on the charge. Conversely, if the evidence viewed favorably to the defendant would support a defense, even if the jury might ultimately disbelieve it, the jury is instructed on that defense. Is a defendant ever entitled to a theory of defense instruction as opposed to an instruction on an affirmative defense? A theory of defense instruction, absolutely. The Matthews case from the U.S. Supreme Court in 1988 holds that if the evidence supports a theory of defense instruction, the defendant is entitled to that. This court has agreed with that time and time again as well. It's reviewed de novo because it's a question of law at that point. That's the Breguier case from this court en banc in 2013. It's the Farah case from this court in 2018. But if the evidence viewed favorably to the defendant would support that defense, the jury is instructed on it. So the point to our system in instructing juries is properly instructed on the law from both sides' perspectives. The jury weighs the evidence and makes its determination. Here, in refusing Mr. — sorry. Well, but wasn't the essence of your proffered theory of defense instruction covered by the intent instruction that was given? No, it was not, Your Honor. The words good faith never appear once in any of the intent and any of the charging instructions. In the Casperson case in 1985, which is the only one of the cases that the parties have cited on this issue, actually reviewing this kind of issue de novo. And keep in mind, of course, that the error here is that the district court failed to view the evidence in the light most favorable to my client. Had the district court viewed the evidence correctly, it would have issued that instruction. But in the Casperson case, the court — But, counsel, let me follow up. I mean, the words intentionally, voluntarily, knowingly — and I'm not going to just reread them because you know what I'm talking about — all appear in the instruction. And maybe it's a question of harmless error. I don't know. But there is no way, if the jury convicted him, that they possibly could have found good faith. It's just impossible, assuming that we follow their instructions. And so it seems to me that good faith instruction would be superfluous, given what the jury verdict was. What's your response to that? Good faith instruction, Your Honor, is not superfluous. Charging the jury that a finding of specific intent to defraud is required for a conviction does not direct the jury's intention to the defense of good faith. So Your Honor just said it was impossible that the jury would find that. I don't agree with that at all. The jury might well have thought — they wouldn't have known that good faith itself is a defense to what's being said. So you're telling me that somebody could have an intent to defraud someone else, doing it knowingly and voluntarily, and still be acting in good faith? No, I'm not saying that, Your Honor. What I'm saying is that the jury didn't know that good faith was a defense to this. The jury was instructed, here's what you have to find to find him guilty. What the government must prove, without telling them a complete defense, doesn't tell them the whole story. That's the problem. That's the issue. And this court held that in Casperson, which hasn't ever been overruled. None of the more recent decisions about this overrule Casperson. The point is that it doesn't direct the jury's attention to that defense. We do have cases, both before and after Casperson, that don't really apply to Casperson's result. It's kind of a derelict on the ocean of the law, respectfully. I disagree that it's a derelict on the ocean of the law, Your Honor, and here's why. The cases — the one that came before is Scherer, that I think you're referring to, from the early 1980s. Casperson disagrees with Scherer and says that, actually, no, the charging instructions are not enough. The later — and I'll get back to Scherer in a moment. The later two decisions are Sanders in 1987 and Brown in 2007. What Scherer, Brown, and Sanders all have in common is they use the wrong standard of review. All three of them use abusive discretion as the review. Frankly, Scherer and Sanders predate the Supreme Court's clarification of this issue in Matthews in 1988. And both of them use abusive discretion review rather than de novo. And then Brown predates Bregeer, where this court held, and Young, where this court held that review is de novo. This is an important distinction because here what we're really talking about is the district court's error as a matter of law in failing to view the evidence as the law required. Let me return to my initial question, if I may. I don't understand why, for instance, suppose your defense was alibi, OK? I wasn't there. Is the defendant ever entitled to an instruction on that theory? Or is it just a matter of, you know, it's a non-guilty if you weren't there? I mean, do you see what I'm saying? I don't understand how a defendant would be entitled to that kind of theory of defense instruction at least when all it does is sort of highlight what the defendant is going to argue in closing. It seems to me it's almost a kind of a comment on the evidence by the court. I disagree. So if the defendant is if his if his testimony is that I wasn't there, then that's that's simply a negation of the it's not it's not a specific complete defense. It's not it's true of this as well. And this court consistently has promulgated and approved of model rule. Sorry, model instruction. Model instruction, it seems to me, could could be reconciled with my position because it's it would never be the case. I don't think that a court would be forbidden to give such an instruction as they're available at the discretion of the judge, I guess. But the fact that there's a model model instruction, first of all, they're not binding in any way. Second of all, just the existence of the instruction doesn't mean it doesn't really get too very far to to allow your argument that there was an entitlement to one in this case. But there there is entitlement. It's it's Matthews. The defendant is entitled to an instruction to any recognized defense for which there exists evidence sufficient for a reasonable jury to find a mistake. And that's and that that's not necessarily about an affirmative defense. It's about a complete legal defense to to to the case at issue. But again, getting back to the real problem here, which the government really can't address and they don't really try, is that the error here is one of the law. And, you know, I can get into harmless error certainly in a little bit. But the the district court's error it made is one of law that it failed to view the evidence most favorably to my client. And here, your honors, you have the district court openly saying that it believed the evidence was not sufficient for this instruction because it was, quote, not credible, self-serving, not persuasive. And even the government has countered it. You can't have district courts denying defense instructions simply for this reason. And the government doesn't really try to get around that, except in their brief at one point to try to argue that. You know, in fact, you view the evidence most favorable to the government in deciding whether to issue a defense instruction. That's not the law and never has been. Instead, you know, in deciding whether the evidence warrants a particular instruction, we always view the evidence and any reasonable inferences and the like favor most favorable to the party who issued it. And that means taking evidence in that party's favor as true. You know, construing conflicts in that party's favor and drawing inferences from the evidence. And this is true even if it's weak, inconsistent or of doubtful credibility. And your honor keeps mentioning theory of defense. This is from the scout case in 97, the Parker case in 2001. Quote, a defendant is entitled to an instruction on a theory of defense, even though the evidentiary basis for that theory is weak, inconsistent or of doubtful credibility. This court has held that time and time again. And the problem with the later cases, Sanders and Brown and the earlier case, sure, that hold otherwise for this kind of instruction, is they use the wrong standard of review and they're on a different issue. They aren't about, like Casperson was, whether the evidence was sufficient. In Casperson, although it was also just the defendant's own statements, that the alleged false statements were made with a genuine belief that they were true. That's exactly the same inference that can be drawn here. Mr. Asimani's statements to the FBI agents and the bank investigator, Mr. Riggan. And together, however, a fact finder might have evaluated that evidence. He's entitled in this circumstance to have the jury specifically instructed on his theory of defense, which this court has held time and time again and has never has never overruled that either. I see that I'm getting close to the time I wanted to reserve for rebuttal, but I want to briefly address this forfeiture issue. That was that there were ninety one thousand dollars that the FBI agent who testified about the amount that my client had personally obtained, personally benefited, couldn't actually testify what it was or where it went. It was equally possible from her own evidence that it would have gone to my client's alleged co-conspirators. So that's not sufficient under the statute for a forfeiture in that amount. Counsel, I wanted to ask you about that. Is it is the focus on what the scheme cost in terms of where the money went? In other words, isn't there isn't it enough for forfeiture purposes that they they've traced the money they know as a product of the scheme and that needs to be put back? Or am I missing the point here? It's not about what the scheme caused. It's about what my client personally obtained from it under Honeycutt. And I know there's some back and forth about whether Honeycutt applies to the fraud forfeiture statute as opposed to just the controlled substances forfeiture statute. But here the government has conceded that that it's not trying to forfeit any money that my client's co-conspirators obtain. The issue is that the ninety one thousand dollars the agent was agent Slower was unable to testify where it had gone at all. She said point blank. I don't know what that money was for. So there's no proof that it didn't go to my client's co-conspirators. And with that, if the court would permit me, I'd like to reserve the rest for rebuttal. Very well. Thank you, Mr. Sternberg. The court will hear from the government. May it please the court. David Wagner of the United States. I'd like to start with fundamentals and with specifically what is a good faith theory of instruction or a good faith of defense. However, it's termed good faith defense is a theory of defense. It's not an affirmative defense. This goes to Judge Arnold's point. And if the court wants a source for what's the difference between an affirmative defense and a theory of defense, the best source I found is actually from the model jury instructions from the circuit, which, to be clear, are not promulgated by this court. But they are put together by people who are learned in the law. And Section 9, the intro comment to Section 9 of the model jury instructions, explains that an affirmative defense introduces an additional element into the case, which must be proved by the defendant in the case of insanity, coercion or withdrawal from conspiracy, or disproved by the government in the case of entrapment or self-defense. A theory of defense, on the other hand, is a denial of one of the original elements of the offense. Good faith is a denial of the intent elements of a fraud offense. So it's a theory of defense. It doesn't introduce a new legal element into the case. That point is important because it affects almost every issue in this case, starting with the standard of review. When this court reviews theory of defense instructions, it uses an abuse of discretion standard of review. This court has stated in multiple cases, in King, in Robinson, in Anderson, in Brown, all cases cited in the brief, that the correct standard of review is abuse of discretion for a good faith instruction. The issue is settled. Mr. Asimani doesn't identify any case suggesting that a good faith instruction should be reviewed de novo. I would also point this court to the decision in Meads, which didn't involve a good faith instruction. It involved mere presence instruction, another sort of theory of defense instruction. Meads makes clear that affirmative defense instructions are reviewed de novo, but theory of defense instructions are reviewed for abuse of discretion. When would a district court abuse its discretion in this kind of case? How would that be shown? I think it would be very rare. It would only happen if the instructions on intent were insufficient to properly instruct the jury on what the government has to prove for intent in a fraud case. Well, but in that case, so the judge is going to say, well, I'm not going to instruct you correctly on intent, so I'm going to give you this instruction on your theory of defense? I mean, how could that be? I mean, in that case, the case gets reversed on the other instruction, right? Let's see, that's what, well, anyway, I'm sorry. Go ahead. Yeah, hopefully that would never happen, but the point from this court's decision... One of the difficulties I had with this case was that the judge in the district, the judge did a very conscientious job of reviewing the evidence and essentially saying, well, nobody can believe this, I guess, so I'm not going to give the theory of defense. But it seems to me that that kind of analysis is more at home in situations where what you're dealing with is an affirmative defense. Is there enough evidence here for this to go to a jury on the question? So it seems to me that the district court may have done more than it needed to in order to refuse the defense, the instruction, if you see what I mean, because, again, I'm not sure how the discretion could ever be abused if all it does is highlight what the court essentially highlights the defendant's testimony, which just says essentially, I ain't done it. You know, I wasn't there, wasn't me. I didn't mean to. Those are all the same thing, kinds of theories of defense. Exactly. Alibi is a theory of defense, just like just like good faith. And I agree with you. The court did not need to look at the evidence and decide if it supported a good faith instruction. And I would actually point you to page 508 of the trial transcript. It was the beginning of the fourth day of trial. The district court actually said that the other instructions on intent adequately cover what good faith covers. So the district court did hold that view as well. And I think it went above and beyond in explaining why the evidence didn't support good faith. Yes. But thinking about that evidence, though, the district court got it right there, too. There was no evidence that actually supported Mr. Osamani's good faith. Remember what his evidence was. It was evidence that he had said things to bank investigators and to an FBI forensic analyst that basically said, I'm getting this money for car parts in my car business. I have a business contract with this victim named P.C. And I have a business shipping cars overseas. Those are the evidence of his statements, which were false, by the way. And he didn't deny a trial that they weren't actually true. Evidence that he made those statements is not evidence of his good faith belief. Good faith is an honestly held opinion and belief. The fact that he said some things doesn't show that he believed those things. There's no evidence in this case that he possessed an honestly held opinion or beliefs. Only evidence that he had said some things which weren't true. The other part of this is that for a defendant to produce sufficient evidence of good faith belief, there has to be some evidence of why he believed the thing that he believed, even if there had been evidence in this case that Mr. Osamani actually believed the things he said to be true. To be clear, there wasn't. There would have to be evidence of why he believed those things to be true, because without some evidence as to why, the jury can't evaluate whether it's a belief held in good faith or not. And it's instructive to compare this case. There's a lot of discussion about Caspersen. So let's talk about Caspersen. Compare this case with Caspersen. There, the defendant said that they had believed a third person had secured an international loan and that the funds would become available. It was an advanced fees scheme. So they were charging people advance fees to get this loan that they promised would be forthcoming. And it turned out there was no loan. So they produced evidence. They all testified and they testified that they had actually believed that the loan would be forthcoming. And why? Because a third person, an international financier named Therion, had told them that it would be. And that's the sort of evidence you need to get a good faith instruction to the extent you can ever be entitled to a good faith instruction. That's sort of evidence you need. There is no evidence like that in this case. The district court didn't make a credibility finding because Mr. Osamani never testified. The district court's point, as I understand it, was that the evidence that he had made statements was not evidence of good faith. And that is correct. District court got it right. Just going back very briefly to the standard of review, Mr. Osamani has cited the case, a case called Young. To be clear, Young involved an entrapment and abandonment defense. Those are affirmative defenses, not theories of defense. So they were properly reviewed to Novo. Mr. Osamani has also cited Bruguier. That case involved failure to instruct the jury on an element defense. So the jury wasn't actually- I'm sorry. I'm having difficulty hearing you. I'm sorry. I'm sorry. Can you hear me better if I hold my microphone? The audio was breaking up a little. Okay. Is this better? I think so, yes. Thank you. Okay. So Mr. Osamani has cited this case called Bruguier. It was an en banc decision from this court. The issue in that case was whether the jury had been instructed on an element of the offense. Completely different situation than what we're dealing with here. This is a theory of defense case. So neither Bruguier nor Young changed this court's precedent, holding that theory of defense instructions are reviewed for abuse of discretion. Turning to the other instructions in this case. In almost every decision that this court has decided on a good faith theory of defense instruction, it is held that the other instructions setting forth the mens rea for the crime adequately cover the defendant's theory of defense. And that was the holding in cases like Nance, which predated Casperson, by the way, and is a case that Mr. Osamani has never addressed. It's a holding in Scherer. It's a holding in Brown. It's a holding in Sanders. So a whole string of cases hold that if you properly instructed the jury on mens rea required for the offense, there's no need to give a good faith instruction. That's an appropriate basis for affirming in this case as well. And I think it's worth noting Mr. Osamani has never explained what he would have argued differently at trial had the jury been instructed on good faith. He made all the arguments that one would expect to see made to make a good faith theory of defense. To negate the intent elements of the crime. And he's never explained what he would have done differently, aside from using the words good faith, if the jury had been instructed differently. It seems to me he could have used that phrase in closing anyway. Of course. Even without the instruction. Absolutely. I don't see anything that would have prohibited him from using the instruction. And the district court never suggested that he couldn't or shouldn't. Very briefly back to Casperson, because it is sort of an outlier case in this area. I think the court should note that Casperson held that the good faith instruction was required, quote, in the circumstances, unquote. So that's a very clear indication that Casperson wasn't setting forth a blanket rule that you always have to get to give a good faith instruction. It was saying in the circumstances of that case, it was required. And remember, the circumstances were very different. In that case, the defendants all testified about what they believe. Mr. Osamani didn't testify. The evidence of guilt was not overwhelming. And the jury deliberated for five days. The evidence of Mr. Osamani's guilt was overwhelming, as even the district court recognized it sentencing. And the jury deliberated for only two hours after a five day trial in this case. So I would suggest that Casperson doesn't say what Mr. Osamani says. It says even if it did, it's inconsistent with other decisions from this case, including decisions that precede it and would need to be followed under the rule from Nader. Excuse me very briefly on harmless error. This goes to Judge Strauss's point. The jury was instructed comprehensively about the need to find that Mr. Osamani voluntarily and intentionally joined in an agreement to commit wire fraud. And he knew the purpose of that agreement and that he acted with intent to defraud. The jury could not have made those findings beyond a reasonable doubt and also found that he instructed in good faith. So even if this court were to find that there was any error in not giving the good faith instruction, it is harmless beyond a reasonable doubt. Turning briefly to forfeiture, the district court ordered Mr. Osamani to forfeit a money judgment in the amount of approximately $381,000. And that amount comes from sources and uses analysis that an FBI agent conducted for a snapshot of the money that Mr. Osamani received during the course of the fraud. If the court wants to look at the analysis, it's on page A5 of the government's appendix of exhibits. Basically, between November 1, 2015 and March 7, 2016, Mr. Osamani received $2.6 million into his account from the victims in this case. He did several things with that money. He sent $1.8 million approximately to bank accounts in Ghana, presumably distributing proceeds of the fraud to his co-conspirators overseas. He also used just shy of $300,000 to buy cars and auto parts and to ship them overseas, also presumably another way to distribute proceeds of the fraud overseas. And then he spent $381,000 on other things. Those things included a $50,000 down payment for a Lexus, PayPal expenses, retail expenses, money sent to his fiance at the time, a whole host of other things. And the government argued to the district court that those other things he spent the money on, the $381,000, reflect the amount of money he personally obtained. Because he didn't send that money overseas, either by transferring the money or by buying cars and shipping them overseas. And under the government's position on the rule from Honeycutt, which the government is conceding would apply here in this case, a defendant cannot be required to forfeit amounts that went to co-conspirators. In other words, there's no joint and several liability under the forfeiture statute. So that was why the government excluded the money he sent to his co-conspirators and asked the district court for a forfeiture of only the money that apparently it stayed with him. Now, it's absolutely true. We weren't able to tell from the bank records how he spent a portion of that money, $91,000. It's just that the records didn't show how he sent it. But the government made a good faith effort to separate out the money he distributed to his co-conspirators and to ask the district court to forfeit only the money that remained, which is the $381,000 that he spent for other things. There's no question Mr. Asamani has not disputed that that amount represents the proceeds of the fraud. Mr. Asamani also hasn't disputed that that amount of money was deposited in his bank accounts, either his personal accounts or accounts belonging to companies that he controlled. The only question is, does it matter that we don't know how he spent the money? The government's position is no. It doesn't matter. He received it as long as he didn't distribute it to co-conspirators such that it was the proceeds he personally obtained. It just doesn't matter how he spent it. Keep in mind that the amount of loss in this case, the amount of money that victim sent to Mr. Asamani, was over $3 million. He's been required to forfeit only $381,000. And that forfeiture judgment was not an error. Unless there are any other questions, which I'd be happy to answer, the government would ask this court to affirm. Hearing none, thank you, Mr. Wagner. Mr. Sternberg, your rebuttal. Thank you, Your Honor. Briefly, the government just told the court that you can't have a theory of defense instruction unless the defendant testifies and his statements can be construed favorably to the government to support him. That is not the law and never has been. On page 45 of our brief, I have a long quote from this court's decision in the Scout case, which was also re-quoted again a few years later in the Parker case, Scouts 97, Parkers 2001. The defendant does not have to testify or even offer any evidence. The basis for his theory of defense may derive from the testimony of government witnesses on direct or cross examination, as it did here. The evidence to support a theory of defense need not be overwhelming. A defendant is entitled to an instruction, entitled to an instruction on a theory of defense, even though the evidentiary basis for it is weak, inconsistent, or of doubtful credibility. The only way to determine whether a defendant has a theory of defense is to view the evidence in the light most favorable to the defendant. At no time, and the government just conceded, I think, that the district judge did not do that here. If we allow district judges to deny defense instructions on the basis of viewing defense evidence most favorably to the government, no defendant will ever have a defense. That can't be what they mean. That can't be what this court is going to hold, because it's never held that before, and that's simply not the law. As for Casperson, the government said that the circumstances, the circumstances that the court was referring to very specifically is that however a fact finder might evaluate the strength and credibility of the evidence, they're entitled in these circumstances, where they have evidence, in their favor. Now, there, of course, it was the defendants testifying on their own behalf, but it certainly can be just as it was here, viewed most favorably to my client, that he believed maybe he was an absentee businessman. Maybe he was a lackluster businessman. Maybe he wasn't the greatest businessman keeping track of his records, but that's not bad faith. And you could view his statements taken as true and drawing inferences in his favor, which, of course, is what the court held in the white case means to construe evidence in a party's favor. Could have viewed it that way and found that he acted in good faith. The district court erred as a matter of law in refusing to view the evidence that way and refusing the instruction. As a result, we'd ask the court to reverse. Very well. Thank you, counsel. We appreciate your appearance and arguments today. Case is submitted and we will decide it in due course.